IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MAXWELL ABUYA,

 Petitioner,

 v.                CASE NO. 17-2293-JWL

RICHARD DORNEKER,
JEFFERSON SESSIONS,

 Respondents.

## MEMORANDUM AND ORDER

 This matter is a petition for writ of habeas corpus filed under 28 U.S.C. § 2241. Petitioner is detained at the Chase County Adult Detention Center in Cottonwood Falls, Kansas, under an order of removal entered by the immigration court in Kansas City, Missouri. Petitioner seeks immediate release from custody, asserting that his continued detention pending removal has exceeded the six-month period considered presumptively reasonable.

**I. Background**

 On or about December 29, 2005, Petitioner, a native and citizen of Kenya, entered the United States at Chicago, Illinois, with an F-1 Student Visa. (Doc. 4–1, at 4.) On June 29, 2015, an immigration judge in Kansas City, Missouri, ordered Petitioner removed to Kenya and denied his application for relief. *Id*. On July 29, 2015, Petitioner appealed the immigration judge's order to the Board of Immigration Appeals ("BIA"). On July 18, 2016, the BIA dismissed the appeal. *Id*.

 On September 9, 2016, a Warrant of Removal/Deportation was issued for Petitioner. *Id*. at 26. On October 3, 2016, Petitioner was taken into custody by ICE. *Id*. at 4. On October 18,

1

2016, Petitioner filed an Application for a Stay of Deportation or Removal with ICE in Kansas City, MO. *Id*. at 5. The Application was denied by the Field Office Director in Chicago, Illinois, on October 21, 2016. Petitioner filed the instant habeas petition on May 23, 2017.

Kenya requires a travel document for anyone being removed who is not in possession of a valid passport. *Id*. Deportation Officer Katy Casselle ("Casselle") sent a travel document request via UPS to the Kenya Consulate in Los Angeles, California, on October 28, 2016. *Id*.

On December 28, 2016, Deportation Officer Dustin Sutton completed the Post Order Custody Review ("POCR") and determined that Petitioner should continue to remain in ICE custody based on the pending request for a Kenya travel document. On December 29, 2016, the field office and field office director recommended continuing Petitioner's detention, based on the following facts: (1) Petitioner failed to maintain or comply with conditions of his admission as an F-1 Student; (2) Petitioner was ordered removed to his homeland of Kenya; and (3) Petitioner's travel document request is currently pending with the Kenya Consulate. *Id*. The Decision to Continue Detention was entered on December 29, 2016, and served personally on Petitioner on January 4, 2017. *Id*. at 5, 28–29.

On March 15, 2017, Casselle spoke by phone with Immigration Officer Evelyn ("Evelyn") at the Kenyan Consulate. *Id*. at 6. They arranged for the Consulate to have a telephonic interview with Petitioner on March 17, 2017, and Petitioner's telephonic interview was conducted by Evelyn on that date. *Id*.

On March 29, 2017, Casselle completed the Transfer Checklist for the 180-day Post Order Custody Review ("POCR"), and transferred the checklist to ICE Enforcement and Removal Office Headquarters Removal and International Operations ("ICE/ERO HQ RIO"). *Id*.

On April 3, 2017, Casselle called the Kenya Consulate and was notified that Evelyn was not available. *Id*. On April 5, 2017, Casselle spoke with Evelyn, who stated that she did not need any additional information from ICE, and that she may be able to complete and issue the travel document for Petitioner before the week was over. *Id*. On April 6, 2017, a Decision to Continue Detention was entered by ICE/ERO HQ RIO, and the decision was served on Petitioner on May 9, 2016. *Id*. at 6, 30–31.

Casselle called the Kenya Consulate on April 10, and April 24, 2016, and was told that Evelyn was either out of the office or unavailable. *Id*. at 6–7. On April 25, 2016, Casselle spoke with Evelyn, who requested to speak again with Petitioner and indicated that once she spoke with Petitioner she might be able to complete and issue the travel document for Petitioner. *Id*. at 7. On April 26, 2017, Evelyn conducted Petitioner's telephonic interview. *Id*.

Casselle called the Kenya Consulate on May 3, May 9, May 16, May 25 and May 30, 2017, and was told that Evelyn was either out of the office or not available. *Id*. Casselle called on May 10, 2017, and was unable to reach anyone. *Id*.

On May 30, 2017, Casselle requested assistance from ICE Headquarters to obtain a travel document for Petitioner by emailing Robert Tremont—the Point of Contact for cases involving Kenyan nationals. *Id*. Tremont notified Casselle on May 30, 2017, that he is attempting to arrange face-to-face interviews with the Embassy of Kenya, for many Kenyan nationals with Final Orders. *Id*. at 8.

On June 14, 2017, Casselle completed the Transfer Checklist for the 270-day POCR, and transferred the checklist to ICE/ERO HQ RIO. *Id*. A Decision to Continue Detention was entered on June 16, 2017, and served on Petitioner on June 20, 2017. *Id*. at 8, 32–33.

Casselle called the Kenya Consulate on June 14, 2017, and was again notified that Evelyn was out of the office. *Id*. Casselle states that once the travel document is received, she will send the necessary documents to the ICE travel coordinator and removal will take place in ten to fifteen days from when the travel coordinator receives the necessary documents. *Id*.

## II. Discussion

To obtain habeas corpus relief, a petitioner must demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S. C. § 2241(c)(3). The federal district courts have habeas corpus jurisdiction to consider the statutory and constitutional grounds for immigration detention that are unrelated to a final order of removal. *Demore v. Kim*, 538 U.S. 510, 517–18 (2003).

Under 8 U.S.C. § 1226, the Attorney General may arrest and detain an alien pending a determination of whether the alien is to be removed from the United States. Detention during this "pre-removal period" is considered definite because it terminates upon the immigration court's removal decision. *Id*. at 529.

Upon the entry of a final removal order, the matter enters the "removal period," and the statutory authority for detention shifts to 8 U.S.C. § 1231. Under § 1231, the removal period begins on the latest of: (1) the date the order of removal becomes administratively final; (2) if the removal order is judicially reviewed, and the court orders a stay of removal, the date of the court's final order; or (3) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B). An order of removal is administratively final upon "a determination by the Board of Immigration Appeals affirming such order." 8 U.S.C. § 1101(a)(47)(B)(i).

After an order of removal becomes administratively final, the Attorney General "shall detain the alien" during the 90-day removal period established under 8 U.S.C. § 1231(a)(2). *See Zadvydas v. Davis*, 533 U.S. 678, 683 (2001) and *Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005). Generally, the government is required to remove the alien held in its custody within the 90-day removal period. *See* 8 U.S.C. § 1231(a)(1)(A)–(B).

While the government may detain an "inadmissible" or criminal alien beyond the statutory removal period, *see* 8 U.S.C. § 1231(a)(6),[1] the government may not detain such an alien indefinitely. *Zadvydas*, 533 U.S. at 699. Instead, the detention of an alien subject to a final order of removal for up to six months is presumptively reasonable in view of the time required to accomplish removal. *Id*. at 701. Beyond that period, if the alien shows that there is "no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. Furthermore, as the period of detention grows, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*. The six-month presumption does not mean that every alien must be released after that time, but rather an alien may be detained "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*.

The order for Petitioner's removal became administratively final on July 18, 2016, when the BIA dismissed his appeal. Petitioner was taken into custody on October 3, 2016. Although

---

[1] Section 1231(a)(6) provides that:
> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order or removal, may be detained beyond the removal period and, if released, shall be subject to terms of supervision in paragraph (3).

Petitioner's removal was under § 1227(a)(1)(C)(i). *See* Doc. 4–1, at 24–25 (BIA's July 18, 2016 decision dismissing appeal and finding that Petitioner conceded he is subject to removal under section 237(a)(1)(C)(i) of the Act, and noting it was unnecessary to consider whether Petitioner was also removable under section 237(a)(1)(A) of the Act but if it were, the BIA would affirm under that section as well).

Petitioner has been detained in excess of the presumptively reasonable six-month period, he must show that there is no significant likelihood of removal within the reasonably foreseeable future.

Petitioner alleges that despite his cooperation and efforts by ICE, there is no promise from Kenya, but rather noncommittal statements that travel documents might be issued someday. Petitioner argues that Respondents' Answer confirms that they are no closer to removal than they were when Petitioner was arrested. Petitioner cites the Court's recent cases to illustrate that the Kenya Consulate is reticent and nonresponsive. *See Anyimu v. DHS*, No. 16-3232-JWL, 2017 WL 193180 (D. Kan. Jan. 18, 2017); *Towet v. ICE*, No. 17-3033-JWL, 2017 WL 2345623 (D. Kan. May 26, 2017).

There is no suggestion that Petitioner has failed to fully cooperate with the efforts by ICE to remove him during the removal period. *Cf. Aiodun v. Mukasey*, 264 F. App'x 726, 729 (10th Cir. 2008) (unpublished) (finding that the main reason petitioner remained in the United States was his repeated court challenges to removal and refusal to cooperate with ICE officials in obtaining a passport and other necessary travel documents). Although the regulation at 8 C.F.R. § 241.14 allows ICE to continue detention of particular removable aliens even though there is no significant likelihood that the alien will be removed in the reasonable foreseeable future, Petitioner does not fall within the special circumstances set forth in the regulation.[2]

Petitioner has made a sufficient showing that there is no significant likelihood of removal in the reasonably foreseeable future. Therefore Respondents must respond with evidence sufficient to rebut that showing. The evidence set forth in the Answer is insufficient to rebut that

---

[2] "The regulation recognizes four categories of aliens whose special circumstances warrant continued detention: (1) aliens with a highly contagious disease that is a threat to public safety; (2) aliens detained on account of serious adverse foreign policy consequences of release; (3) aliens detained on account of security or terrorism concerns; and (4) aliens determined to pose a special danger to the public." *Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1243 (10th Cir. 2008) (citing C.F.R. § 214.14(b–d), (f)).

showing. While the record shows that ICE personnel have made repeated attempts to contact the Kenya Consulate to obtain the travel documents necessary for Petitioner's removal, it does not show that the Consulate has made any real progress toward preparing those documents, despite Petitioner's apparent cooperation and despite statements that the documents are forthcoming. *See Kacanic v. Elwood*, No. CIV.A. 02-8019, 2002 WL 31520362, at *3 (E.D. Pa. Nov. 8, 2002) (finding no legitimate reason to believe that removal will occur in the reasonably foreseeable future where there was lack of any definitive answer or any indication that a definitive answer was likely soon from Yugoslavian officials) (citing *Mohamed v. Ashcroft*, 2002 U.S. Dist. Lexis 16179, at *3 (W.D. Wash. April 15, 2002) (finding that the lack of a definite answer from the foreign consulate indicated that no removal was likely in the reasonably foreseeable future); *see also Seretse v. Ashcroft*, 215 F. Supp. 2d 37, 50 (D.C. Cir. 2002) ("Respondents have not demonstrated to this Court that any travel documents are in hand, nor have they provided any evidence, or even assurances from the Liberian government, that travel documents will be issued in a matter of days or weeks or even months.") (citing *Okwilagwe v. INS*, No. 3–01–CV–1416–BD, 2002 WL 356758, at *2–3 (N.D. Texas March 1, 2002) (alien detained for eleven months after INS represented that it would have travel documents in a few days; court found that if INS did not have documents in hand, it failed to sustain its burden of showing that alien's removal would occur in the reasonably foreseeable future)).

The Court directs the parties to file status reports with the Court by August 15, 2017. If Respondents have not obtained travel documents or made other substantial progress toward obtaining such documents by that date, the Court is inclined to grant the petition. Petitioner's release will be subject to supervision in accordance with 8 U.S.C. § 1231(a)(3), and any other

terms and conditions requested by Respondents that the Court deems appropriate. Any such requests by Respondents shall be included in the status report.

**IT IS THEREFORE BY THE COURT ORDERED** that the parties shall file a joint status report or separate status reports by **August 15, 2017.**

**IT IS SO ORDERED**.

Dated this 1st day of August, 2017, at Kansas City, Kansas.

s/ John W. Lungstrum
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**